# Supreme Court of Texas

No. 21-0693

In re Cleo Petricek,

*Relator*

On Petition for Writ of Mandamus

JUSTICE HUDDLE delivered the opinion of the Court.

A group of voters in the City of Austin petitioned the Austin City Council for a proposed ordinance that, according to the petition, would establish minimum standards for the Austin Police Department "to enhance public safety and police oversight, transparency and accountability." Rather than adopt the proposed ordinance, the City Council chose to place it before the voters for approval at the next general election. And rather than use the caption set forth in the petition as the ballot language, the City Council prepared and approved its own description of the ordinance to be used on the ballot. Because that language differed materially from the caption in the petition, Relator Cleo Petricek, an Austin voter and one of the signers of the

petition, brought this mandamus proceeding challenging the City Council's chosen ballot language.[1]

We conclude Relator is entitled to relief, in part. While we agree with Relator's contention that the Austin City Charter requires the City to place the petitioned caption on the ballot verbatim if it complies with the law, we recognize that the City retains discretion to modify that caption if the City determines the caption does not. Here, we conclude the City correctly determined that the caption's omission of the ordinance's financial impact amounted to a violation of state law, requiring that the caption be modified. But we also conclude that the City Charter forbids the remainder of the City's revisions to the petitioned caption, because those revisions were not necessary to bring the petitioned caption into compliance with the law.

**I**

Over 25,000 registered voters in the City of Austin (including Relator) signed a petition seeking adoption of a citizen-initiated ordinance in response to the Austin City Council's adoption of a budget the petitioners claim "drastically defunded" the Austin Police Department, reportedly causing the cutting of 180 officer positions and the delay of four cadet classes. The petition includes the following caption for the proposed ordinance:

> A PETITIONED ORDINANCE TO ENHANCE PUBLIC
> SAFETY AND POLICE OVERSIGHT, TRANSPARENCY
> AND ACCOUNTABILITY BY ADDING NEW CHAPTER
> 2-16 TO ESTABLISH MINIMUM STANDARDS FOR THE

---

[1] Relator's mandamus petition names the City of Austin and the Austin City Council as respondents. For convenience, we will refer to respondents collectively as the City.

POLICE DEPARTMENT TO ENSURE EFFECTIVE PUBLIC SAFETY AND PROTECT RESIDENTS AND VISITORS TO AUSTIN, AND PRESCRIBING MINIMAL REQUIREMENTS FOR ACHIEVING THE SAME

According to the petition, the City of Austin reduced the budget for the Austin Police Department for 2020–21 at a time when City residents and visitors are dissatisfied with public safety. The proposed ordinance would adopt a new Chapter 2-16 to the Austin City Code, consisting of three sections: "Minimum Standards and Resources," "Representative Community Policing," and "Coordination of Oversight." The proposed ordinance states that it "will require the City Council to adopt an adequate level of police funding, staffing, and training and enhance police oversight." Among other things, the proposed ordinance requires the City to employ a minimum ratio of two sworn police officers to every one thousand residents. It also requires the City to enroll at least three full-term cadet classes until such time as the department's staffing levels return to the levels prescribed in the 2019–20 city budget.

The initiative petition was filed with the Austin City Clerk on July 19, 2021. On August 3, the Clerk certified that the petition had more than 20,000 signatures of valid voters. Under the Austin City Charter, the City then had the choice of either passing the proposed ordinance without amendment or ordering an election on the ordinance on the next allowable election date. AUSTIN CHARTER art. IV, § 4. On August 11, the City ordered that a city election be held on November 2, 2021, to submit the proposed ordinance to the voters. The City approved the following language to be submitted on the ballot:

> **Proposition A**: Shall an ordinance be approved that, at an estimated cost of $271.5 million - $598.8 million over

five years, requires the City to employ at least 2 police officers per 1,000 residents at all times; requires at least 35% of patrol officer time be uncommitted time, otherwise known as community engagement time; requires additional financial incentives for certain officers; requires specific kinds of training for officers and certain public officials and their staffs; and requires there be at least three full-term cadet classes for the department until staffing levels reach a specific level?

Relator simultaneously sought mandamus relief in the Third Court of Appeals and this Court, requesting an order compelling the City to replace this ballot language with the caption of the petitioned ordinance. Relator argues the Austin City Charter mandates that the caption of a voter-initiated ordinance be used as the language on the ballot. In the alternative, Relator argues the ballot language approved by the City is deficient in several respects and must be modified.

The court of appeals denied relief without a substantive opinion. The City filed a response to the mandamus petition in this Court, which we have considered along with the parties' filings in the court of appeals.

## II

This Court has jurisdiction to "issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election." TEX. ELEC. CODE § 273.061. Mandamus relief is appropriate if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy. *In re AutoNation, Inc.*, 228 S.W.3d 663, 667 (Tex. 2007). Voters who sign an initiative petition have standing to seek mandamus relief against the city council if they can establish the elements for such relief. *In re Williams*, 470 S.W.3d 819, 821 (Tex. 2015). If the ballot can be corrected before the election, a

4

post-election contest is an inadequate remedy for mandamus purposes. *Id.* at 823.

Relator first argues the City Charter imposes a duty on the City to use the caption of the proposed ordinance as the ballot language, without modification. Relying on article IV of the City Charter, which reserves to the people of Austin the power of direct legislation, Relator argues the City has no discretion to craft ballot language for a petition-initiated ordinance with a caption, and that any modification of the petitioned caption violates the City's ministerial duty under article IV, section 5 to place the petitioned caption on the ballot verbatim. The City responds that the City Charter does not automatically bind the City to place on the ballot whatever caption is included with a petitioned ordinance. Instead, the City contends section 52.072(a) of the Election Code "gives the job of crafting Proposition A's language to the city council."[2]

We conclude that the City Charter requires the City to place the petitioned caption on the ballot verbatim if the caption complies with applicable law, including the common-law standard for ballot language set forth in *Dacus v. Parker*, 466 S.W.3d 820, 823 (Tex. 2015). But we also conclude that when the petitioned caption falls short of that

---

[2] In *In re Durnin*, 619 S.W.3d 250 (Tex. 2021), another challenge to ballot language chosen by the Austin City Council for a petition-initiated ordinance, the parties presented similar arguments regarding the interpretation and effect of the Austin City Charter. *See id.* at 252–53. Due to the expedited nature of that proceeding, and because we otherwise granted relief to the relators, we declined at that time to resolve the merits of this dispute. *Id.* at 253. We now answer the question we expressly left open in *Durnin*.

5

standard, the City has limited discretion to revise the caption to the extent necessary to bring it into compliance. Here, the petitioned caption fell short of the *Dacus* standard because it included no mention of the proposed ordinance's cost, and the City thus had authority to remedy that omission. But the City did not have carte blanche to rewrite the petitioned caption wholesale, and it abused its discretion by doing so.

Article IV of the Austin City Charter expressly reserves to the people of the City "the power of direct legislation by initiative." AUSTIN CHARTER art. IV, § 1. The City Charter allows qualified voters to submit by petition an ordinance for adoption by the City.[3] Once a petition is certified by the city clerk to be sufficient, the City may either (1) pass the initiated ordinance without amendment, or (2) order an election and submit the ordinance to a city-wide vote on the next allowable election date. *Id.* art. IV, § 4.

Section 5 of article IV states: "The ballot used in voting upon an initiated or referred ordinance shall state the caption of the ordinance and below the caption shall set forth on separate lines the words, 'For the Ordinance' and 'Against the Ordinance.'" *Id.* art. IV, § 5. According to Relator, this language creates a nondiscretionary ministerial duty on the City to use the caption of the petitioned ordinance as the ballot language.

---

[3] The City Charter does not, however, allow for petition-initiated ordinances that are "in conflict with this Charter, the state constitution, or the state laws" or ordinances "appropriating money or authorizing the levy of taxes." AUSTIN CHARTER art. IV, § 1. The City does not contend that the proposed ordinance falls within any of these exceptions.

The form, content, and preparation of election ballots are governed by chapter 52 of the Texas Election Code. Section 52.072 addresses propositions, which the Election Code defines as "the wording appearing on a ballot to identify a measure." TEX. ELEC. CODE § 1.005(15). "Measure" is defined by the Election Code as "a question or proposal submitted in an election for an expression of the voters' will." *Id.* § 1.005(12).

Section 52.072 provides: "Except as otherwise provided by law, the authority ordering the election shall prescribe the wording of a proposition that is to appear on the ballot." *Id.* § 52.072(a). Relator argues that the City Charter is a "law" that otherwise prescribes the wording that must appear on the ballot, and therefore the City must follow the City Charter and use the proposed ordinance's caption as the ballot language. As a general matter, we agree.

The Election Code defines "law" to mean "a constitution, statute, *city charter*, or city ordinance." *Id.* § 1.005(10) (emphasis added). The City Charter article governing petition-initiated ordinances states that the ballot "shall state the caption of the ordinance." AUSTIN CHARTER art. IV, § 5. Although the Election Code does not define "caption," we have described similar language that appears before the body of an ordinance and gives notice of the ordinance's purpose as its caption. *See Sw. Bell Tel. Co. v. Hous. Indep. Sch. Dist.*, 397 S.W.2d 419, 421 (Tex. 1965) ("The purpose stated in the body of an act must conform to the notice-giving purpose stated in the caption . . . ."). The City acknowledged in the court of appeals that "[t]he caption is the proposition that briefly lays out the measure (or initiated ordinance)."

7

The City Clerk specifically identified this preliminary language as the "caption" when she certified the sufficiency of the initiated-ordinance petition. Accordingly, the City Charter's requirement that the ballot "state the caption of the ordinance" is a "law" that "otherwise provide[s]" the prescribed wording for a proposition on the ballot. TEX. ELEC. CODE § 52.072(a); AUSTIN CHARTER art. IV, § 5. Thus, while Election Code section 52.072(a) provides the default rule that the authority ordering the election prescribes the ballot language, it allows for other law—here, article IV, section 5 of the City Charter—to vest that authority elsewhere. Section 5 plainly places that authority with the measure's proponent.

Relying on *City of Galena Park v. Ponder*, 503 S.W.3d 625 (Tex. App.—Houston [14th Dist.] 2016, no pet.), the City argues that Texas law places the responsibility for preparing ballot language on the authority ordering the election, not on the party petitioning for the election. *Id.* at 635 (citing TEX. ELEC. CODE § 52.072). However, there is no indication the city charter in that case contained language similar to that in the Austin City Charter, which expressly provides that the ballot used in voting on a voter-initiated ordinance "shall state the caption of the ordinance." AUSTIN CHARTER art. IV, § 5. This specific provision in Austin's City Charter affords the exception to the ballot-language authority that would otherwise be given to the City. *See* TEX. ELEC. CODE § 52.072(a).

The City is correct, however, that the City Charter does not compel the City to passively adopt as ballot language, verbatim, every caption of every ordinance that is proposed and certified. For an election

8

ordered by a city authority, the Election Code places the duty to prepare the official ballot on the city secretary.[4]  *Id.* § 52.002.  The Texas Constitution forbids a city from passing any ordinance containing any provision inconsistent with the constitution or state law.  TEX. CONST. art. XI, § 5.  The City Charter expressly mandates that voters propose only ordinances that are "not in conflict with this Charter, the state constitution, or the state laws."  AUSTIN CHARTER art. IV, § 1.  The language appearing on the ballot, regardless of its source, must "substantially submit[] the question . . . with such definiteness and certainty that the voters are not misled."  *Dacus*, 466 S.W.3d at 823 (quoting *Reynolds Land & Cattle Co. v. McCabe*, 12 S.W. 165, 165 (Tex. 1888)).  In short, the ballot language must not be inconsistent with the law, and it "must identify the measure by its chief features, showing its character and purpose."  *Id.* at 825.

We therefore conclude the City has the authority to determine whether the petitioned caption meets these standards.  If it does, then the City Charter obligates the City to adopt the caption of the petition-initiated ordinance as the ballot language.  But in cases where the proposed caption does not comply with the law, the City may revise the caption to the extent necessary to bring it into compliance.

Here, the City argues the caption for the petitioned ordinance is inconsistent with state law.  We agree with the City in one respect.  In *Dacus*, we recognized that ballot language may mislead the voters in either of two ways: "First, it may affirmatively misrepresent the

---

[4] The Election Code defines "city secretary" to include a city clerk.  TEX. ELEC. CODE § 1.005(1).

9

measure's character and purpose or its chief features. Second, it may mislead the voters by omitting certain chief features that reflect its character and purpose." *Id.* at 826.

The City contends the caption is misleading because it contains no mention of the cost to the City to comply with the ordinance. Relator argues that reference to the cost of the ordinance is unnecessary and is itself misleading because the proposed ordinance is not an expenditure mandate or an appropriation ordinance. However, the petitioned ordinance makes clear that it is driven largely by concerns about the City's budget priorities. Under the heading "Purpose," the ordinance states that the City's 2020–21 budget "drastically defunded the police department . . . . In addition to these budget reductions, more than $120 million in funds were also set aside from police activities that could be ended or redirected." This "Purpose" statement goes on to say that the proposed ordinance "will require the City Council to adopt an adequate level of police *funding*, staffing, and training and enhance police oversight" (emphasis added).

In *Dacus*, residents of Houston challenged ballot language describing a Houston City Charter amendment that would create a dedicated drainage fund, which would be funded by charges imposed on properties that would benefit from the drainage system. *Id.* at 822. We held that the ballot language was misleading because it failed to mention the drainage charges:

> Because the ballot did not mention the charges, it fell short of identifying the measure for what it is—a funding mechanism and fiscal burden on benefitting property owners. Failing to identify something for what it is can be misleading, even for those presumed to be familiar with

10

> it. . . . [W]hen the citizens must fund the measure out of their own pockets, this is a chief feature that should be on the ballot, and its omission was misleading.

*Id.* at 826.

We conclude that the cost to the City of the proposed ordinance is a chief feature that reflects the ordinance's character and purpose. We do not hold that every ballot proposition must include language reflecting the measure's cost impact. In this case, however, part of the stated purpose of the petitioned ordinance was to require the City to adopt an adequate level of funding for the requirements it would impose. The omission from the ballot language of any reference to that funding may mislead the voters. Accordingly, the City was correct in concluding that the ballot language should include a reference to the proposed ordinance's cost.

The balance of the petitioned caption, however, should not have been modified. The City argues the caption was misleading for multiple reasons in addition to its failure to mention the proposal's cost. In particular, the City argues the petitioned caption failed to comply with the *Dacus* standard because it did not mention certain details of the ordinance, such as the minimum police staffing levels, the minimum levels of community engagement, or the training mandates required by the proposed ordinance. We disagree. Ballot language "must capture the measure's essence," but "neither the entire measure nor its every detail need be on the ballot." *Id.* at 825. The caption of the proposed ordinance states that the ordinance "add[s] new Chapter 2-16 to establish minimum standards for the police department to ensure effective public safety and protect residents and visitors to Austin, and

11

prescrib[es] minimal requirements for achieving the same." The City does not contend this language affirmatively misrepresents the ordinance's character and purpose or its chief features. The City argues the specific requirements this language omits are "key features," but the City provides no explanation how those specific requirements "reflect [the ordinance's] character and purpose" so that their omission may mislead the voters. *See id.* at 826. Nor are we persuaded the petitioned caption fails to capture the measure's essence.

Except for its omission of the potential cost of the ordinance, the caption of the petitioned ordinance is sufficient under the law to serve as the ballot language. Given the Austin City Charter's express requirement that the caption of a petition-initiated ordinance be placed before the voters, the City has no discretion to adopt its own ballot language. It must use the petitioned caption, and it has discretion only to make specific changes as necessary to remedy inadequacies under the law. Here, the City abused its discretion by choosing to draft and use its own ballot language rather than using the petitioned caption. The ballot language should consist of the caption of the ordinance as set forth in the voter-initiated petition, supplemented by a description of the ordinance's cost.

The City's proposed ballot language described the proposed ordinance as having "an estimated cost of $271.5 million - $598.8 million over five years." Relator does not assert this estimate of the cost is inaccurate. Instead, Relator argues the City's use of a five-year estimate exaggerates the cost and the City might in the future repeal or amend the ordinance so that those costs are not expended. As discussed above,

12

we agree with the City that the omission of any cost information can be misleading, and we cannot say that including the City's cost estimate in the ballot language affirmatively misrepresents the ordinance's character and purpose or its chief features so as to make it potentially misleading. *See id.* Accordingly, we conclude that the ballot language must consist of the petitioned ordinance's caption followed by "at an estimated cost of $271.5 million - $598.8 million over five years."

### III

For the foregoing reasons, without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant mandamus relief and direct the Austin City Council to revise the ballot language for "Proposition A" as approved on August 11, 2021, consistent with this opinion. We are confident the City Council will comply, and the writ will issue only if it does not.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** September 1, 2021

13